# No. 24-20143

# IN THE

# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

United States of America,

Plaintiff - Appellant

v.

Edward Constantinescu; Perry "PJ" Matlock; John Rybarczyk; Gary Deel; Stefan Hrvatin; Tom Cooperman; Mitchell Hennessey; Daniel Knight,

Defendants - Appellees

## On Appeal from

United States District Court for the Southern District of Texas

4:22-CR-612-1

# BRIEF OF APPELLEE JOHN RYBARCZYK CONCERNING *KOUSISIS V. UNITED STATES* AS JOINED BY EDWARD CONSTANTINESCU, MITCHELL HENNESSEY, TOM COOPERMAN, GARY DEEL, STEFAN HRVATIN AND PERRY MATLOCK

SUBMITTED BY:
Eric Samuel Rosen
DYNAMIS LLP
175 Federal Street, Suite 1200
Boston, MA 02110
617.802.9157

Q. Tate Williams
Philip H. Hilder
Stephanie K. McGuire
HILDER & ASSOCIATES, P.C.
819 Lovett Blvd.
Houston, TX 77006
713.955.9111

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................... iii

TABLE OF AUTHORITIES .............................................................................. iv

    I.    The District Court's Opinion ................................................................... 1

    II.   *Kousisis* Confirms the District Court's Opinion ........................................ 2

    III.   A Post-*Kousisis* Decision Supports the District Court's Ruling ................ 6

CERTIFICATE OF SERVICE ............................................................................ 9

# TABLE OF AUTHORITIES

**Cases**

*Kousisis v. United States*,
 145 S. Ct. 1382 (May 22, 2025) ....................................................1, 2, 3, 4, 7

*United States v. Greenlaw*,
 84 F. 4th 325 (5th Cir. 2023) ..................................................................1, 2

*United States v. Chastain*,
 23-7038, 2025 WL 2165839 (2d Cir July 31, 2025)...............................3, 6, 7

*Ciminelli v. United States*,
 598 U.S. 306 (2023) .............................................................................6, 7

*Kousisis v. United States*, 145 S. Ct. 1382 (May 22, 2025) confirms that Judge Hanen made the correct decision to dismiss the Indictment.

## I. The District Court's Opinion

The district court ruled that the fatal defect in the Government's Indictment was that it failed to "connect the alleged 'scheme [to defraud]' to the deprivation of the other investors' traditional property interests (*i.e.*, the government failed to allege that the object of the scheme involved harm to the victims.)." R4172. Relying on this Court's opinion in *United States v. Greenlaw*, 84 F. 4th 325, 339 (5th Cir. 2023), the district court recognized that a "scheme to defraud" is defined as "any false or fraudulent pretenses or representations intended to deceive others in order to obtain something of value, such as money, **from the entity to be deceived**." R4172 (bold in original). *Greenlaw's* holding that money or property obtained as part of a scheme to defraud must come from the scheme's "victim" drove Judge Hanen's ruling.

With *Greenlaw* controlling, the district court found that the Government's allegation that the defendants sought to "'maximize' their own trading profits," was insufficient by itself. Financial gain *alone* failed to allege a scheme to defraud for "financial gain" was only "half of the equation." R4172. The other half—"harming a victim's traditional property right"—was "lacking," as any "losses to victims happened incidentally (i.e., 'at the expense of') rather than as the 'object of' the alleged scheme." R4173. Put differently, when a "scheme to defraud" does *not*

deprive a victim of money or property, the result was that the Indictment "at best allege[d] a 'right-to-control' theory rather than a theory grounded in the deprivation of victims' traditional property interests." R4174. In short, the district court dismissed the Indictment because it did not allege *any* harm or injury to a victim. The defendants' profits did not come from those allegedly deceived.

## II.   *Kousisis* Confirms the District Court's Opinion

*Kousisis* explained, again and again, that a "scheme to defraud" *must* contemplate harm or an injury to the victim. *See, e.g.*:

- 145 S. Ct. at 1391 ("obtaining *the victim's* money or property must have been the 'aim' not an 'incidental byproduct'" of the fraud);

- *id*. at 1392 (fraud "was a term with expansive reach" . . . "and remedies turned on the nature of *the plaintiff's alleged injury*");

- *id*. at 1394 (courts "do not concern themselves with wrongs which do not produce injury; but 'injury' and 'pecuniary loss' are not synonymous terms.");

- *id*. a 1394 ("We have said that a fraud occurs only when the victim 'has been actually misled to his injury.'");

- *id*. at 1394 fn. 5 ("Justice Gorsuch, in his concurrence, understands us to have 'spurn[ed] fraud's historic injury rule' … he is mistaken. All agree that 'at common law, fraud required proof that the *victim was injured*.'").

The narrow issue in *Kousisis* is not whether an injury to a victim is required. *Kousisis* made clear that it is. Rather, the issue was whether a finding of injury requires the government to "plead and prove that the defendant caused his victim a 'net pecuniary loss.'" *Kousisis*, 145 S. Ct. at 140,5 (Gorsuch J. concurrence); *id.* at

2

1394 ("petitioners beg the question by assuming that economic loss alone could satisfy this common-law 'injury' requirement"); *see also United States v. Chastain*, 23-7038, 2025 WL 2165839 (2d Cir. July 31, 2025) ("In *Kousisis* . . . the Supreme Court held only that *actual economic loss* is not an element of a wire fraud offense.") (emphasis in original). The Supreme Court said no. *Kousisis*, 145 S. Ct. at 1397. Economic loss is *not* a necessary component of a finding of injury. *Id*. The gravamen of fraud, the Court held, "was the deception-induced deprivation of property—not economic loss—that common-law courts generally deemed injurious." *Id*. at 1387.

Further, context is critical when evaluating *Kousisis*, which concerned the viability of the "fraudulent-inducement theory," scheme where a defendant "uses a material misstatement to trick a victim *into a contract* that requires handing over her money or property—regardless of whether the fraudster, who often provides something in return, seeks to cause the victim net pecuniary loss." *Id*. at 1388. The *Kousisis* defendants schemed "to obtain contracts through feigned compliance with PennDOT's disadvantaged-business requirement." *Id*. at 1391. PennDOT was harmed because adherence to these requirements was material to its decision to award funding. *Kousisis* at 1390. The defendants obtained money from PennDOT through deception, but they did the work the contract required. *Id*.

At issue in *Kousisis* was whether the victim, PennDOT, had suffered the requisite injury or harm contemplated by the federal fraud statutes. The Court ruled

3

that PennDOT had suffered an injury—PennDOT was deceived by the defendants' lies into providing government funding—because injury under the federal fraud laws was not limited only to those who suffered economic harm. *Id*. *Kousisis* concerned the scope of the required injury to the victim; it did not disturb years of Supreme Court rulings holding that a victim must suffer *some* injury. *See, e.g., id.* at 1395 ("[I]f the action was one for rescission or a prosecution for false pretenses, the plaintiff's required 'injury' ordinarily need not be financial.").

When lies induce a victim to enter a contract, it follows that the victim would have been induced to part with her money and the defendant would have obtained money from the victim. "Harm" in this situation is presumed because the victim directly surrenders "property to the defendant." R4175. The situation here is different, as the court recognized. In the stock market, people do not contract with others to trade shares. The market is fluid and anonymous; *why* people buy and sell stocks is unknown. Accordingly, "financial gain" obtained by a defendant does not necessarily come from a victim—the person deceived into buying or selling shares. Unlike with a contract, financial gain is not the mirror image of the victim's injury.

This is not to say that the government can *never* allege that trading counterparties are victims who surrendered their money to fraudsters. In traditional pump-and-dump schemes a person or group typically controls the entire trading activity of a stock through manipulative trading, unlawful promotions, and lies about

4

the company. Every purchaser is the "victim" because there was no real market in the particular security to begin with. But that is not what is alleged here.

Here, the defendants allegedly "sought to conceal from, and further mislead," their social media followers about their "true trading positions and intentions." R10012. There was no fake company the defendants controlled. Defendants' "crime" was withholding information from others—potentially valuable economic information as Judge Hanen explained—but it was not a scheme where any alleged lies were used to obtain money from victim investors. What Judge Hanen correctly understood was that a desire to profit is not the equivalent of a scheme where an alleged victim is *deprived* of money, as is required to sustain a fraud Indictment.

Furthermore, *Kousisis* did not overrule *Ciminelli v. United States*, 598 U.S. 306, 312 (2023), the Supreme Court case Judge Hanen relied upon at length. To the contrary, the Court reiterated that "nothing we said in *Ciminelli* is at odds with our holding here." *Kousisis* at 1398. That is true. *Kousisis* requires that the money or property of victims be targeted, as does *Ciminelli*. Without an injury to a traditional property interest—money or property—there can be no federal fraud crime. In short, *Kousisis* reaffirmed long standing precedent that an injury or harm to a victim is a *key component* of a "scheme to defraud." Judge Hanen followed that precedent

faithfully by holding that the Indictment failed because it did not plead a harm or injury to a victim. *See* R4164-75.[1]

The question *Kousisis* contemplated—whether "economic loss" is a prerequisite to a finding of injury—has no bearing on this case. *Kousisis* at 1388. Judge Hanen did not rule that the Indictment failed to allege a "net pecuniary harm" to the victim. Rather, it was because the Indictment did not plead any harm at all that it was dismissed. R4175. Thus, that portion of *Kousisis'* holding is irrelevant here.

### III. A Post-*Kousisis* Decision Supports the District Court's Ruling

Although *Kousisis* was handed down just recently, one Court of Appeals has already rejected the Government's attempts to expand *Kousisis'* reach beyond its narrow holding. In the July 31, 2025, *Chastain* decision, the Second Circuit rejected the Government's *Kousisis*-based argument that confidential business information could "qualify as a traditional property interest even if it has no commercial value to its holder." *Chastain*, 2025 WL 2165839, at *23. The Second Circuit wrote that *Kousisis* "reiterated" that "obtaining the victim's money or property must have been

---

[1] *Kousisis* also emphasized the importance of a demanding materiality standard as a "limit" to fraud prosecutions. 145 S. Ct. at 1396 (discussing *Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016)). This Court may affirm the district court's judgment on any grounds supported by the record. *See U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 338 (5th Cir. 2008). *Kousisis'* application of *Escobar*'s materiality standard provides a further, independent basis to affirm the district court's dismissal of the indictment predicated on alleged failures of individual traders to tweet their "true trading positions and intentions."

the 'aim' … of the defendant's fraud." *Id.* Far from creating new law, *Kousisis* reinforced that deception without intended harm is not wire fraud. *Id.*

The *Chastain* opinion is important for another reason. In ruling that confidential business information lacking economic value was *not* "property," the Second Circuit invoked *Ciminelli*'s holding that the federal fraud laws apply only to "traditional property interests." *Chastain*, 2025 WL 2165839, at *6. More problematic for the Government is that, like the district court did here, the Second Circuit applied *Ciminelli*'s holding—there is no traditional property right to valuable economic information—to Chastain's indictment, which did *not* charge a right-to-control theory of property. *See* Ex. A [Indictment] at 6.

The Government has long argued that because this Indictment did not *use* the magic words "right-to-control," *Ciminelli* could not apply. *See, e.g.*, Opening Brief at 16 ("but the superseding indictment in no way relies on the 'right-to-control' theory *Ciminelli* rejected" and the "indictment here does not rely whatsoever on a 'right-to-control' theory of fraud."). The Second Circuit disagrees, making clear that it is the nature of the allegations, and not the wording of the Indictment, that matters.

In sum, *Kousisis* reinforces Judge Hanen's holding that an Indictment's failure to allege harm to a victim is a failure to allege fraud. *Kousisis*' narrow ruling—economic harm is not a prerequisite to *be* a victim—is of no moment because Judge Hanen did not rule on such grounds.  His decision should be affirmed.

7

SUBMITTED BY:

/s/ *Eric S. Rosen*
**DYNAMIS LLP**
Eric S. Rosen
225 Franklin St., 26th Floor
Boston, MA 02110
(617) 802-9157–telephone
erosen@dynamisllp.com

**HILDER & ASSOCIATES, P.C.**
Q. Tate Williams
Philip H. Hilder
Stephanie K. McGuire
19 Lovett Blvd.
Houston, Texas 77006
(713) 655-9111–telephone
(713) 655-9112–facsimile
philip@hilderlaw.com
tate@hilderlaw.com
stephanie@hilderlaw.com

# CERTIFICATE OF SERVICE

I certify that on August 11, 2025, I caused the foregoing brief to be served upon all Filing Users through the Court's Case Management/Electronic Case Files ("CM/ECF") system.

/s/ *Eric S. Rosen*
**DYNAMIS LLP**
Eric S. Rosen
175 Franklin St., Suite 1200
Boston, MA 02110
(617) 802-9157–telephone
erosen@dynamisllp.com
