

**U.S. Department of Justice**

Criminal Division

---

*Appellate Section*
*950 Pennsylvania Avenue NW*
*Washington, D.C.  20530*

August 11, 2025

The Hon. Lyle W. Cayce, Clerk
United States Court of Appeals for the Fifth Circuit
600 S. Maestri Place
New Orleans, LA 70130

> Re:    *United States v. Edward Constantinescu, et al.*, No. 24-20143
>           United States' Letter Brief Regarding *Kousisis v. United States*

Dear Mr. Cayce:

The United States files this letter brief in response to this Court's order requesting supplemental letter briefing "addressing the relevance of *Kousisis v. United States*, 145 S. Ct. 1382 (2025) to this case."  In *Kousisis*, the Supreme Court conclusively rejected the claim, also advanced by the defendants here (*e.g.*, Br. 22-24), that a defendant may not be convicted under the federal fraud statutes unless he intended to cause the victim net pecuniary loss.  *See* 145 S. Ct. at 1388. Consistent with *Kousisis*, this Court should reverse.

## I.

Stamatios Kousisis was a project manager for an industrial-painting company.  *Kousisis*, 145 S. Ct. at 1388.  He and his company sought and obtained contracts with the Pennsylvania Department of Transportation ("PennDOT")

to restore two Philadelphia landmarks. *Ibid.* PennDOT, consistent with a federal rule, required bidders to commit to subcontracting a percentage of their contracts to disadvantaged businesses. *Id.* at 1389. Instead of satisfying this requirement, Kousisis and his company materially lied: although they represented that they would acquire supplies from a disadvantaged business, in reality they used that business "as a mere 'pass-through' entity" that did nothing commercially useful. *Ibid.*

After their deception was discovered, Kousisis and his company were charged with and convicted of wire fraud and conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349. *Ibid.* Before the district court, the Third Circuit, and the Supreme Court, they argued that these convictions suffered from a fatal flaw: in their view, "because their paintwork met PennDOT's expectations, PennDOT had received the full economic benefit of its bargain," and so they had not "schemed to defraud PennDOT of 'money or property' as the federal wire fraud statute requires." *Id.* at 1389-1390. In other words, they argued, their convictions could not stand because they "did not seek to cause the victim net pecuniary loss." *Id.* at 1390.

The Supreme Court rejected that argument. First, the Court explained, "the broad, generic language of § 1343" "plainly" encompasses fraudulent-inducement schemes: the defendants schemed to obtain tens of millions of

dollars in money or property from PennDOT within the meaning of the statute, notwithstanding their provision of services in return. *Id.* at 1391-1392. Second, when Congress used the terms "defraud" and "fraudulent" in § 1343, it did not implicitly import any "economic loss" requirement from the common law. *Id.* at 1392-1395. Third, the defendants "offer[ed] no principled way to draw the line" between what they viewed as fraudulent-inducement cases that might be actionable (those involving property "'with unique qualities'") and their case. *Id.* at 1395-1396. Finally, the Court emphasized that a fraudulent-inducement theory is fully consistent with its prior precedents, including its rejection of the "right-to-control" theory in *Ciminelli v. United States*, 598 U.S. 306 (2023), because, "[u]nlike the right-to-control theory, fraudulent inducement does not treat 'mere information as the protected interest'"; "[r]ather, it protects money and property." *Kousisis*, 145 S. Ct. at 1396-1398.

## II.

*Kousisis* confirms the correctness of the Government's—and this Court's—longstanding interpretation of the money-or-property fraud statutes as not requiring proof of a victim's economic loss.[*] To the extent that the district

---

[*] Although *Kousisis* did not involve securities fraud charges, this Court has acknowledged that § 1348 "borrows key concepts from the mail and wire fraud statutes, and courts have given the terms similar treatment." *United States v. Greenlaw*, 84 F.4th 325, 339 n.6 (5th Cir. 2023).

court's dismissal of the superseding indictment, and the defendants' defense of that dismissal in this appeal, rested on a contrary premise, *Kousisis* has reaffirmed that contention is without legal support.

The securities fraud scheme alleged in the superseding indictment is a prototypical pump-and-dump scheme that had the victim-investors' money as its object.  The defendants used materially false and misleading messages "to induce other investors to purchase the [targeted] securities so that [they] could sell their shares at a higher price at and around the time of the messages." ROA.220.  In dismissing the superseding indictment, the district court observed, among other things, that "the investors here surrendered their property to the stock market at market prices, and in return, received the benefit of the bargain in the form of securities."  ROA.4175.  And the defendants have fully embraced the district court's suggestion that the victim-investors were not deprived of their money or property at all because they received securities in exchange, citing out-of-circuit cases in support of their proposition that "lies that induce transactions" where "the purchasers got what they paid for" "are insufficient to qualify as deprivations of money or property."  Br. 28-29 (citing *United States v. Milheiser*, 98 F.4th 935 (9th Cir. 2024); *United States v. Guertin*, 67 F.4th 445 (D.C. Cir. 2023); and *United States v. Shellef*, 507 F.3d 82 (2d Cir. 2007)); *see also id.* at 25 (discussing *United States v. Takhalov*, 827 F.3d 1307, 1312 (11th Cir. 2016)).

4

As the Government explained in its principal brief, this Court had already made clear that pecuniary loss is unnecessary to allege or prove a scheme to defraud, so the fact that victim-investors received securities in exchange for the money of which they were deprived is legally irrelevant. *See, e.g.*, Gov't Br. 23 (quoting *United States v. Greenlaw*, 84 F.4th 325, 346 (5th Cir. 2023), and *Shaw v. United States*, 580 U.S. 63, 67 (2016)). Now, *Kousisis* has conclusively abrogated the case law on which the defendants rely. *Kousisis*, 145 S. Ct. at 1390 (listing *Guertin*, *Takhalov*, and *Shellef* as among the now-abrogated cases that "disagree[d]" with the proposition that a fraud defendant need not seek to cause a victim pecuniary loss). *Kousisis* has confirmed, as the Government has maintained, that the superseding indictment here need not allege that the defendants "intended to cause their victims a net pecuniary loss"; rather, "an intent to deprive victims of their money or property is sufficient." Reply Br. 2.

Additionally, *Kousisis* provides further support for the Government's contention (*e.g.*, Gov't Br. 16-22) that the prosecution here does not somehow depend on the "right-to-control" theory invalidated by *Ciminelli*. As the Court explained, "the fraudulent-inducement theory is not a repackaging of the right-to-control theory" because it "does not treat mere information as the protected interest"; "[r]ather, it protects money and property." *Kousisis*, 145 S. Ct. at 1398 (brackets and internal quotation marks omitted). As the Government has

5

explained, this prosecution is likewise not a repackaging of the right-to-control theory; the conduct alleged in the superseding indictment revolves around and depends upon the defendants' intent to deprive victim-investors of their money.

Since the Supreme Court decided *Kousisis*, several other courts have rejected arguments similar to those advanced by the defendants here. For example, in *United States v. Runner*, the Second Circuit rejected the defendant's argument that "the indictment was defective insofar as it did not allege that what his customers received was worth less than what they were promised," explaining that "*Kousisis* expressly rejected that proof of net economic loss is required under the mail and wire fraud statutes." 143 F.4th 146, 157 n.9 (2d Cir. 2025). Similarly, in *United States v. Clark*, the Seventh Circuit held that an indictment charging conspiracy to commit mail and wire fraud "easily" satisfied the pleading requirements of Federal Rule of Criminal Procedure 7 where it "identified the 'object' of the fraud as to obtain money," notwithstanding the defendant's argument that "customers received exactly what they paid for." 140 F.4th 395, 418-420 (7th Cir. 2025) (discussing *Kousisis* and emphasizing that "[c]rafting a facially sufficient indictment is not a high hurdle" (internal quotation marks omitted)); *see also id.* at 419 n.9 (rejecting "attempt to use *Ciminelli*" where indictment "alleged that the charged defendants sought to deprive their customers of money, an interest undisputably covered by the fraud

statutes"). *See also United States v. Pukke*, No. 1:23-cr-168, 2025 WL 2089261, at *3 (S.D.N.Y. July 25, 2025) (explaining economic "losses are not required under the rule set forth in *Kousisis*"); *United States v. Peraire-Bueno*, No. 1:24-cr-293, 2025 WL 2062021, at *10 (S.D.N.Y. July 23, 2025) (rejecting defendants' framing of scheme as merely depriving victims of their "expectations in the value of their cryptocurrency increasing"); *United States v. Bartlett*, No. 1:23-cr-20676, 2025 WL 1635390, at *12 & nn.10-11 (E.D. Mich. June 9, 2025) (explaining that a "scheme sounds in wire fraud even if the victim receives the benefit of their bargain"). This Court should add its voice to this chorus.

## III.

For the foregoing reasons, in addition to those set forth in the Government's principal and reply briefs, this Court should reverse the judgment of the district court and permit this prosecution to proceed.

Respectfully submitted,

| | |
|---|---|
| NICHOLAS J. GANJEI | MATTHEW R. GALEOTTI |
| United States Attorney | Acting Assistant Attorney General |
| THOMAS H. CARTER | |
| Assistant U.S. Attorney | s/  Andrew Laing |
| Southern District of Texas | ANDREW W. LAING |
| | U.S. Department of Justice |
| JOHN J. LIOLOS | Criminal Division, Appellate Section |
| Criminal Division, Fraud Section | 950 Pennsylvania Ave. NW |
| | Washington, DC 20530 |
| | (202) 353-8433 |
| | andrew.laing@usdoj.gov |

# CERTIFICATE OF SERVICE

I certify that on August 11, 2025, I caused the foregoing brief to be served upon all Filing Users through the Court's Case Management/Electronic Case Files ("CM/ECF") system.   I additionally served the foregoing brief upon Carlos M. Fleites, counsel for defendant Hrvatin, via email and identical hard copy.

s/  Andrew Laing
ANDREW W. LAING
U.S. Department of Justice
Criminal Division, Appellate Section
950 Pennsylvania Ave. NW
Washington, DC 20530
(202) 353-8433
andrew.laing@usdoj.gov