

No. 24-20143

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

PERRY "PJ" MATLOCK,

Defendant-Appellee Pro Se

(Edward Constantinescu, et al., Co-Defendants-Appellees)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
NO. 4:22-CR-612

## PETITION FOR PANEL REHEARING

**Perry "PJ" Matlock, pro se**
74 N Lamerie Way
The Woodlands, Texas 77382
Telephone: 832-346-7936
Email: pjmatlock@protonmail.com
Defendant-Appellee

## STATEMENT UNDER FRAP 40(a)(2)

As a pro se litigant, I respectfully submit this petition in good faith under Rule 40(a)(2) for panel rehearing. Rehearing is warranted because the October 2, 2025 panel opinion (Appendix) reversed on the "money or property" element but overlooked an independent, antecedent element: whether the superseding indictment ("SI") alleges any material misrepresentation or omission about an issuer or its securities, as § 1348 requires. That omission conflicts with controlling precedent—*TSC Industries, Inc. v. Northway*, 426 U.S. 438 (1976); *Basic Inc. v. Levinson*, 485 U.S. 224 (1988); *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011); *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257 (2024); and this Court's *United States v. Greenlaw*, 84 F.4th 325 (5th Cir. 2023)— and presents a question of exceptional importance: whether self-referential trading talk and opinions (e.g., "holding," "adding," "$10+ IMO") can be criminalized as securities fraud absent a materially false issuer-level statement. Under settled law, a criminal securities-fraud charge cannot stand absent a materially false or misleading representation or omission in connection with the securities at issue.

The SI alleges no such falsehood, failing an essential element. I respectfully urge rehearing to affirm dismissal or clarify materiality's limits. This petition addresses the materiality/falsity element only (not the "property" question the panel decided on).

1

INTRODUCTION

Materiality slipped out of focus for two reasons. First, the case was viewed through *Ciminelli v. United States*'s property lens, 598 U.S. 306 (2023); the panel reversed under *Kousisis v. United States*, 605 U.S. __ (2025), without reaching materiality. Second, at oral argument the government pivoted, suggesting falsity in "due-diligence" and "catalyst" issuer statements—implying an issuer-facts theory the SI does not charge. When the Court asked about posts like "I am going to hold on to my investment. I think the security would reach a particular price," a panel judge responded: "There's no false statement in that. The falsity is as to the value of the security, right?" The government then shifted to say that "due diligence/catalysts" would be "more obviously objectively false." See Addendum A (timestamps 8:27–9:14). An oral-argument pivot cannot amend a charging instrument. *Russell v. United States*, 369 U.S. 749, 770 (1962).

This is not a classic pump and dump. In every criminal or civil case the government cites, there is either actual materially false issuer statements, a fiduciary/adviser duty, or mechanical market manipulation. Here there is none. The SI alleges no fake corporate news, no fabricated earnings or events, no insider role, no manipulation count, and no duty to disclose trades. Materiality is the boundary that prevents criminalizing everyday market speech. The SI crosses that boundary

only by conflating a day trader's undisclosed intent with a materially false issuer fact—something the law does not allow.

The SI never alleges a fabricated corporate event, falsified financials, or an insider claim; its pleaded "falsity" is the concealment of defendants' own trading intent. These statements describe the trader's own position or intent and do not assert any *issuer* fact that could alter the reasonable investor's total mix." *(See TSC*, 426 U.S. at 448–49; *Basic*, 485 U.S. at 231–32; *Matrixx*, 563 U.S. at 38–45.)

## ARGUMENT

I.    The SI Fails To Allege a Material Misrepresentation or Omission

Under § 1348 a "scheme to defraud" requires a material misrepresentation or a misleading half-truth. *United States v. Greenlaw*, 84 F.4th 325, 339 (5th Cir. 2023). In securities, Materiality is issuer-focused: a fact is material only if a reasonable investor would consider it significant in the total mix of information about the company's value, financial condition, or operations. *TSC Industries v. Northway*, 426 U.S. 438, 448–49 (1976); *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988); *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38–45 (2011). *Macquarie* confirms that Rule 10b-5(b) does not proscribe pure omissions, which are not actionable absent a duty to disclose; liability arises only for half-truths— affirmative statements about issuer-related facts that are rendered misleading by omitted information necessary to make the statement not misleading, 601 U.S. 257,

262–64 (2024) (no liability for pure omissions unless an affirmative issuer statement is made misleading by omitted facts). The government's theory—that omitting intent to sell makes self-referential posts like 'holding' or 'adding' half-truths—fails because such posts assert nothing about the issuer's fundamentals (e.g., fake corporate news, earnings, operations) that would require disclosing trading plans to avoid misleading investors. Here, the SI's exemplars ('holding,' '$10+ IMO,' SI ¶¶ 13–14, 32–42) are personal opinions or strategies, not issuer claims, and thus create no duty to disclose intent. This omission is pure and non-actionable, rendering the SI legally deficient for failing to plead a material falsehood under § 1348. Retail traders owe no duty to disclose trading plans absent a fiduciary relationship, unlike insiders under *Chiarella*, 445 U.S. at 228–30. Thus, nondisclosure of intent to sell cannot transform personal opinions like 'holding' into half-truths. And critically, day-trading sales are not actionable as "half-truths": absent a materially false issuer-level statement, trading while speaking about one's own position cannot be prosecuted as a half-truth as a matter of law. *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 262–64 (2024); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 448–49 (1976).

The panel reversed on the property element. It did not analyze whether the SI pleads any materially false issuer statement about any company. That is a pure legal defect evident on the face of the SI and warrants rehearing.

II.  The SI Does Not Allege a Materially False Issuer-Level Statement or
Half-Truth

On page one, the SI alleges a scheme "based on false and misleading
information and material omissions about those securities" posted to social media.
But when it specifies the supposed "false and misleading" posts, paragraphs 13–14
identify only self-referential messages ("holding"/"swing," "adding," price targets,
and generic "due diligence/catalysts") and then define "falsity" as the concealment
of intent to sell—not as any untrue issuer fact. There is no count that identifies a
concrete corporate falsehood or an omission rendering any issuer statement
misleading. No count specifies a single "material omission" about any issuer.
Paragraph 13 (types of "false and misleading" messages: holding/swing; adding;
price targets; due diligence/catalysts). Paragraph 14 (why "false": because
defendants concealed their intent to induce and then sell). The same theme is
repeated: the SI treats optimism and timing as "false" because of contemporaneous
selling, not because any issuer fact was misstated. Subjective posts like 'holding'
or '$10+ IMO' are immaterial puffery under *Basic*, 485 U.S. at 240, not issuer-
related statements subject to half-truth liability, as the government conceded
(Addendum A, 9:57). Put simply: the SI never pleads a false issuer fact—only that
Defendants' self-referential posts were "false" because of undisclosed selling
intent—which is a pure omission outside Rule 10b-5(b) and § 1348. *Macquarie*,

601 U.S. at 262–64. Absent an affirmative, materially false or misleading *issuer-level* statement, the fact that a day trader sells while speaking about his own position does not create "half-truth" liability under § 1348; nondisclosure of personal trading intent is a pure omission and is not actionable.

III. The Oral-Argument Record Underscores The Government's Pivot to Uncharged Issuer-Fact Theories.

The Court asked whether it matters that defendants discussed their own strategy versus making representations about a stock's quality (7:43). The government agreed any inducing statement must be "both false and materially so" (8:02), and described the allegations as: "I am going to hold on to my investment. I think the security would reach a particular price." A judge replied: "There's no false statement in that. The falsity is as to the value of the security, right?" (8:41). The government then pivoted to "due diligence" and "catalysts" as "more obviously objectively false" (8:48), and later acknowledged that puffery/seller's talk is not material and there is no pattern instruction on puffery in "open-market frauds" (9:57, 10:35). That oral-argument pivot cannot amend the SI. *Russell*, 369 U.S. at 770.

6

IV. *Omnicare* Does Not Criminalize Open-Market Opinions/Trading Talk

The government's reliance on *Omnicare, Inc. v. Laborers Dist. Council*, 575 U.S. 175 (2015), is misplaced. *Omnicare* governs civil § 11 issuer filings, holding opinions can mislead if insincerely held or omitting issuer facts. It doesn't criminalize open-market opinions by non-fiduciary day traders. The government claimed a "statement of belief can be false to the extent that it falsely represents, I sincerely hold the belief" (Addendum A, 9:14). But *Omnicare* requires contemporaneous evidence of disbelief (575 U.S. at 189). The SI relies solely on sales timing (SI ¶¶ 13–14, 32–42), which is "fraud by hindsight," rejected by *Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019), and In re *Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1428 (3d Cir. 1997). As a day trader, Matlock's rapid trades (often seconds minutes apart) reflect market-driven risk management, not insincere beliefs, precluding *Omnicare* liability without contemporaneous evidence of disbelief. Day-trading sales, driven by market conditions, are not actionable as half-truths and cannot be prosecuted under § 1348 without a material falsity about an issuer as a matter of law.

Moreover, opinions like "$10+ IMO" are immaterial puffery, not issuer facts altering the "total mix" of corporate information. *Basic*, 485 U.S. at 240. Section 1348 requires an objectively false issuer-related statement and specific intent; intent alone cannot supply falsity. The government's theory fails all three

7

*Omnicare* prongs: it's the wrong context (criminal, not civil), lacks issuer facts, and ignores materiality.

V. *Neder*'s "capable of influencing" Phrase Does Not Expand Securities-Law Materiality; Treating Influence as Materiality Would Criminalize Speech

The government's reliance on *Neder v. United States*, 527 U.S. 1, 16 (1999), for a "capable of influencing" materiality standard is misguided. *Neder* addressed general fraud (mail/wire), not securities fraud, where materiality is issuer-centric: a fact must significantly alter the "total mix" about the issuer or security. *TSC Industries, Inc.*, 426 U.S. at 449; *Basic*, 485 U.S. at 231–32. Equating influence with materiality would criminalize any trader's opinion that sways others, chilling speech and contradicting the government's concession: "not every false statement, particularly puffery or seller's talk, [is] material" (Oral Argument at 9:57 (Addendum A)). Securities fraud demands objective falsity about issuer fundamentals, not subjective intent or market impact. *Universal Health Servs., Inc. v. United States* ex rel. *Escobar*, 579 U.S. 176, 193–94 (2016) (materiality "demanding"). *Kousisis* maintained materiality's limiting role (605 U.S. ____, slip op. at 8–13 (2025)). The government's overreach would erode this boundary, punishing influence, not fraud.

VI. Concealed Intent to Sell is Not Actionable Absent A Duty to Speak

*Chiarella/Dirks* and *Macquarie* foreclose the omission theory. Silence is not fraud without a duty to disclose—typically a fiduciary or similar relationship. *Chiarella v. United States*, 445 U.S. 222, 228–35 (1980); *Dirks v. SEC*, 463 U.S. 646, 654–55 (1983). *Macquarie* confirms that Rule 10b-5(b) does not impose pure-omission liability; only affirmative half-truths about issuer facts are actionable. The SI identifies no affirmative issuer statement by Mr. Matlock rendered misleading by omission. Its "exemplars" are self-descriptions ("holding," "adding," "price targets") and generic labels ("due diligence," "catalyst") that do not assert concrete issuer facts. Retail traders are not insiders or advisers; they owe no duty to live-blog all of their trades. Without a duty—or a misleading issuer statement to correct—"concealed intent to sell" is not a § 1348 falsehood. This renders the SI legally insufficient, warranting dismissal as a matter of law.

VII. This Theory is Unprecedented—and That Matters

True pump-and-dump cases feature false issuer statements, undisclosed paid touting, or mechanical manipulation. The charging theory here has none of those features. Extending § 1348 to open-market, non-fiduciary opinions would be the first of its kind and would chill lawful speech—contrary to *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477 (1977) (securities laws are not a general code of market ethics).

VIII. Clarifying "Causation" vs. Materiality So the Record Stays Straight

*Kousisis* confirms that fraudulent inducement can satisfy the property element, as stated by this Court, even when the victim receives a quid pro quo, 605 U.S. ____, slip op. at 5–8 (2025). That does not eliminate materiality. The government must still allege a material misrepresentation used to obtain money or property. Price charts and volume may be evidentiary; they cannot substitute for pleading a material false statement about the issuer. Judge Hanen's skepticism about "causation" reflects the same boundary: influence ≠ materiality; intent ≠ falsity. The SI must stand or fall on what it alleges was untrue—and it alleges no issuer falsehood.

## REQUESTED DISPOSITION

I respectfully request that the Court grant panel rehearing and affirm on materiality, holding that the SI fails to allege any material misrepresentation or omission about an issuer or its securities—an essential element of § 1348. Alternatively, I humbly request that the Court clarify the standard by modifying the opinion to explicitly state that materiality under § 1348 requires issuer-focused facts altering the total mix of information, not mere trading intent or influence, consistent with *TSC Industries v. Northway*, 426 U.S. 438 (1976), *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011); that intent alone cannot substitute for falsity; and that pure

omissions, like nondisclosure of personal trading plans, are not actionable absent a duty or misleading issuer statement, per *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257 (2024).

Respectfully submitted,

Perry "PJ" Matlock, pro se
74 N Lamerie Way
The Woodlands, Texas 77382
Telephone: 832-346-7936
Email: pjmatlock@protonmail.com
Dated: October 15, 2025

## ADDENDUM A – Selected Oral-Argument Excerpts

*(Unofficial transcript prepared by Appellee from the official Fifth Circuit audio recording; timestamps are mm:ss. In the event of any discrepancy, the audio controls.)*

(7:43) JUDGE: "Let me ask you even more specifically, with regard to inducement, does it make a difference if the defendants are talking about their own strategy in terms of what they intend to purchase and hold and sell or whether they're making representations about the quality of a particular stock or security."

(8:02) PROSECUTOR: "So of course the false statements that induce the deprivation have to be both false and materially so. And there may be some debate in the trial, indeed I expect there will be, over whether particular statements were actually false or misleading or material."

(8:18) JUDGE: "Or an opinion, a defendant's opinion that somebody acted on. Well, if this person thinks X, then I should act on that."

(8:27) PROSECUTOR: "Yes, exactly. And there are some allegations, of course, along the lines of the defendants told their followers, I am going to hold on to my investment. I think the security would reach a particular price."
(8:41) JUDGE: "There's no false statement in that! The falsity is as to the value of the security, right?"

(8:48) PROSECUTOR: "So a couple of things. So yes, I think generally when there are statements that are allegedly false about the value of the security, the underlying value of the company, when they make statements about things like due diligence or what they call catalysts that they allegedly or that they purportedly thought would increase the price of the security in the future, I think those kinds of statements are more obviously objectively false."

(9:11) JUDGE: "Is that just a function of materiality?"

(9:14) PROSECUTOR: "It's partly a function of materiality. I think also it's a function of whether a statement is susceptible to being false or true. And the rest of my answer to your Honor's question, Judge Higginson, is that a statement of belief can be false to the extent that it falsely represents, I sincerely hold the belief. So I believe this security is going to increase in value. Whether it does or not, if the belief is sincerely held, may not be true or false."

1

(9:39) JUDGE: "Because you remember, Judge Hanen, one concern was sort of the limiting principle, which is every time someone sort of cries out to the open world what you could call 'puffery,' this thing's worth a ton. And then they turn around and sell it. Are they all facing felony securities fraud prosecutions?"

(9:57) PROSECUTOR: "No, and I think the important limitation in which the Supreme Court in *Kousisis* says spends a fair amount of time emphasizing is materiality. And as we point out in a footnote in our filing, not every false statement, particularly statements of negotiating position, statements of puffery or seller's talk, those kinds of statements have generally been rejected as being materially false."

(10:19) JUDGE: "I appreciate both of you have briefed this superbly, only because I'm assuming you have the sophistication to answer this. Is there a jury instruction in these type of open market frauds that tell the jury you can't convict because of puffery?"

(10:35) PROSECUTOR: "I haven't seen a jury instruction along those lines, and I don't believe this Court has a pattern. Certainly that's something that we might discuss as we wrap up for trial, but I can imagine a jury instruction along those lines explaining the difference, particularly when it comes to materiality. But I think to answer your Honor's question, that really is the limiting principal here. As I read Judge Hanen's opinion..."

(10:59) JUDGE: "And intent to defraud."

(11:02) PROSECUTOR: "Of course, and intent to defraud as well is one of the limitations. And with respect to the superseding indictment, I think intent to defraud is amply alleged, as are the other elements of securities fraud... [remainder of answer omitted]"

---

Source: Official Audio Recording, *United States v. Constantinescu, Matlock, et al.*, No. 24-20143 (5th Cir. Sept. 3, 2025), https://www.ca5.uscourts.gov/OralArgRecordings/24/24-20143_9-3-2025.mp3

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 2, 2025

Lyle W. Cayce
Clerk

No. 24-20143

United States of America,

*Plaintiff—Appellant,*

*versus*

Edward Constantinescu; Perry "PJ" Matlock; John Rybarczyk; Gary Deel; Stefan Hrvatin; Tom Cooperman; Mitchell Hennessey; Daniel Knight,

*Defendants—Appellees.*

Appeal from the United States District Court
for the Southern District of Texas
USDC Nos. 4:22-CR-612-1,
4:22-CR-612-2, 4:22-CR-612-3,
4:22-CR-612-4, 4:22-CR-612-5,
4:22-CR-612-6, 4:22-CR-612-7,
4:22-CR-612-8

Before Higginson, Willett, and Engelhardt, *Circuit Judges.*

Kurt D. Engelhardt, *Circuit Judge:*

Defendants were indicted for securities fraud for their involvement in a "pump and dump" scheme. The superseding indictment alleges that defendants induced their social-media followers to purchase securities through posts misrepresenting their trading positions and the potential price of

securities, artificially inflating the securities' prices and allowing defendants to profit. The district court dismissed the indictment, concluding that it failed to state an offense by merely alleging that defendants sought to deprive their followers of potentially valuable economic information instead of a traditional property interest. Because we conclude that the indictment sufficiently alleges a scheme and intent to defraud, we REVERSE the district court's dismissal of the indictment.

I

The government alleges that Edward Constantinescu, Perry "PJ" Matlock, John Rybarczyk, Gary Deel, Stefan Hrvatin, Tom Cooperman, Mitchell Hennessey, and Daniel Knight engaged in a scheme to "pump and dump" securities. Defendants each had large social media followings across various platforms. They held themselves out to be skilled stock traders and frequently posted their trading activities on social media. To carry out their "pump and dump" scheme, the government alleges that defendants would purchase a security, "'pump' the price of that security by posting false and misleading information about the security on [social media] so that other investors were induced to purchase the security and artificially increase its price," and "dump" by secretly selling the security for a profit. Indictment ¶¶ 13–14. The indictment alleges that defendants profited $114 million from their scheme.

Defendants were indicted for conspiracy to commit securities fraud, in violation of 18 U.S.C. § 1349, and multiple counts of securities fraud, in violation of 18 U.S.C. §§ 1348 & 2. Knight pleaded guilty, and the remaining defendants moved to dismiss the indictment. The district court dismissed

No. 24-20143

the indictment, concluding that it failed to allege that defendants schemed to deprive victims of any traditional property interest.[1]

The government timely appealed.

## II

We review the sufficiency of an indictment *de novo*. *United States v. Rafoi*, 60 F.4th 982, 993 (5th Cir. 2023). "[T]he court is required to take the allegations of the indictment as true and to determine whether an offense has been stated." *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (quoting *United States v. Crow*, 164 F.3d 229, 234 (5th Cir. 1999)). An indictment must "(1) enumerate each *prima facie* element of the charged offense; (2) fairly inform the defendant of the charges filed against him; and (3) provide the defendant with a double jeopardy defense against future prosecutions." *United States v. Gaytan*, 74 F.3d 545, 551 (5th Cir. 1996). "In sum, to be sufficient, an indictment must allege each material element of the offense." *United States v. Guzman-Ocampo*, 236 F.3d 233, 236 (5th Cir. 2000) (quotation cleaned up).

## III

The securities fraud statute prohibits schemes to "defraud any person in connection with . . . any security" and schemes "to obtain, by means of false or fraudulent pretenses, representations, or promises, any money or property in connection with the purchase or sale of . . . any security." 18 U.S.C. § 1348. While "[t]here is scant caselaw construing the securities fraud statute in this circuit," § 1348 "borrows key concepts from the mail

---

[1] The district court dismissed the indictment by applying *Ciminelli v. United States*, 598 U.S. 306 (2023). After the district court dismissed the indictment, the Supreme Court clarified in *Kousisis v. United States*, 145 S. Ct. 1382, 1398 (2025), that an indictment alleging a fraudulent-inducement theory, as here, does not run afoul of *Ciminelli*.

and wire fraud statutes," so "courts have given the terms similar treatment," often relying on mail and wire fraud cases in analyzing securities fraud charges. *United States v. Greenlaw*, 84 F.4th 325, 339 n.6 (5th Cir. 2023). With those concepts in mind, securities fraud requires (1) a "scheme to defraud" (2) enacted with an "intent to defraud." *Id.* at 339. The "scheme to defraud" element requires a material misrepresentation "intended to deceive others in order to obtain something of value, such as money, from the [entity] to be deceived." *Id.* (alteration in original) (quoting *United States v. Evans*, 892 F.3d 692, 711–12 (5th Cir. 2018)). The "intent to defraud" element requires "an intent to (1) deceive, and (2) cause some harm to result from the deceit." *Id.* (quoting *Evans*, 892 F.3d at 712).

In sum, a defendant commits securities fraud when he "'engaged in deception'" and "[o]btaining the victim's money or property" was "'an object' of his fraud." *Kousisis v. United States*, 145 S. Ct. 1382, 1390–91 (2025) (quoting *Ciminelli v. United States*, 598 U.S. 306, 312 (2023)). Defendants concede that the indictment adequately alleges deception. But they contend that the indictment does not allege a scheme to defraud nor an intent to defraud. In their view, the indictment merely alleges that they intended to deprive their followers of valuable economic information (not money or property) to enrich themselves (not injure their followers). In light of the Supreme Court's decisions in *Ciminelli* and *Kousisis*, we disagree.

A

Defendants argue that the district court properly dismissed the indictment because it does not allege a scheme to deprive their followers of a protected property interest. While it is true that a defendant cannot be convicted of fraud for depriving an individual of potentially valuable economic information alone, the indictment here went further, properly alleging defendants' scheme to defraud their followers of money.

In *Ciminelli*, the Supreme Court held that a fraud conviction cannot be based solely on the deprivation of valuable economic information. 598 U.S. at 316. There, Ciminelli's construction company paid a lobbyist to help it obtain state-funded jobs. *Id.* at 309–10. The government, in prosecuting Ciminelli for wire fraud, relied solely on a right-to-control theory. *Id.* at 310 & n.1. Under the right-to-control theory, the government attempted to "establish wire fraud by showing that the defendant schemed to deprive a victim of potentially valuable economic information necessary to make discretionary economic decisions." *Id.* at 310. In other words, under the right-to-control theory, the victim's property is the "the right to control [his] assets." *Id.* at 311. The Court held that because the federal fraud statutes protect only traditional property interests, and "[t]he right to valuable economic information . . . is not a traditional property interest," "the right-to-control theory cannot form the basis for a [fraud] conviction." *Id.* at 316.

The situation here is unlike that in *Ciminelli*. The indictment does not mention the right-to-control theory. Rather, it alleges that defendants induced their followers, through misrepresentations, to purchase securities—that is, to part with their money or property. The indictment alleges a "fraudulent-inducement theory," under which a defendant "uses a material misstatement to trick a victim into a contract that requires handing over her money or property." *Kousisis*, 145 S. Ct. at 1388. The Supreme Court, when analyzing the fraudulent-inducement theory, confirmed that it "is not a repackaging of the right-to-control theory." *Id.* at 1398 (quotation cleaned up). Unlike the right-to-control theory rejected in *Ciminelli*, the fraudulent-inducement theory advanced here "protects money and property." *Id.* The indictment does not run afoul of *Ciminelli* because it alleges defendants deprived their followers of a protected property interest by fraudulently inducing them to buy securities.

No. 24-20143

B

Defendants next argue that the indictment fails to allege an intent to defraud because it alleges defendants intended to profit from their scheme, not harm any victim. But the Supreme Court recently rejected a similar argument, holding that the fraud statutes do not require a victim to suffer an economic loss from a defendant's scheme. *Kousisis*, 145 S. Ct. at 1392.

In *Kousisis*, the defendant lied to obtain contracts with a state department of transportation. The state required contractors to subcontract with a disadvantaged business, and Kousisis falsely represented that his company would fulfill that requirement. Once his company was awarded the contracts, Kousisis used the disadvantaged-business subcontractor as "a mere 'pass-through' entity." *Id.* at 1389. When his lie came to light, the government charged Kousisis under the "fraudulent-inducement theory" whereby a defendant "uses a material misstatement to trick a victim into a contract that requires handing over her money or property—regardless of whether the fraudster, who often provides something in return, seeks to cause the victim *net* pecuniary loss." *Id.* at 1388 (emphasis in original). Kousisis argued that the fraudulent-inducement theory could not stand because it permitted a conviction in the absence of evidence that "the defendant sought to hurt the victim's bottom line." *Id.* at 1391. The Court rejected that assertion, holding that a defendant violates the fraud statutes when he "schem[es] to 'obtain' the victim's 'money or property,' regardless of whether he seeks to leave the victim economically worse off." *Id.* at 1392.

The indictment here sufficiently alleges defendants' intent to defraud their followers. For example, it alleges that defendants "post[ed] false and misleading information about the security . . . so that other investors were induced to purchase the security." Indictment ¶ 13. Because the fraud statutes do not require actual economic harm, defendants' followers' receipt

of market-value securities does not obviate the fraud charges. *See Kousisis*, 145 S. Ct. at 1391 (concluding defendant may be liable in fraud even when he "provides something—be it money, property, or services—of equal value in return"). Defendants argue they intended to profit—not harm any victim. But here, that is a distinction without a difference. As the indictment alleges, defendants' object was to obtain money, and they did so by fraudulently inducing their followers to purchase securities. The indictment's allegation that defendants pumped and dumped to gain a profit shows that they "had money in mind." *Id.* at 1397. "[A] fraud is complete when the defendant has induced the deprivation of money or property under materially false pretenses"—regardless of whether the victim suffered a net pecuniary loss. *Id.* at 1394 n.5. The indictment's allegation of defendants' fraudulently inducing their followers to purchase securities is sufficient to allege an injury. *See United States v. Baker*, 923 F.3d 390, 403–05 (5th Cir. 2019) (explaining that the fraud statutes do not impose a "mirror image" requirement where the victim's loss of money or property supplied the defendant's gain); *see also United States v. Smith*, Nos. 23-2840, 23-2846, & 23-2849, 2025 WL 2406104, at *6 (7th Cir. Aug. 20, 2025) (applying *Kousisis* in a similar context).

## IV

Because the indictment sufficiently alleges a scheme and intent to defraud, we REVERSE the district court's dismissal of the indictment and REMAND for proceedings consistent with this opinion.

# CERTIFICATE OF COMPLIANCE

This petition complies with FRAP 40(b) and 32(g)(1) and contains 2,229 words, excluding parts exempted by FRAP 32(f).

Perry "PJ" Matlock, Pro Se

74 N Lamerie Way

The Woodlands, Texas 77382

Telephone: 832-346-7936

Email: pjmatlock@protonmail.com

October 15, 2025

# CERTIFICATE OF INTERESTED PARTIES

The undersigned certifies that the following persons and entities have an interest in the outcome of this case, as described in 5th Cir. R. 28.2.1, so that the judges may evaluate possible disqualification or recusal.

1. Perry "PJ" Matlock, Defendant-Appellee.

2. United States of America, Plaintiff-Appellant.

3. Edward Constantinescu, Co-Defendant.

4. John Rybarczyk, Co-Defendant.

5. Gary Deel, Co-Defendant.

6. Stefan Hrvatin, Co-Defendant.

7. Tom Cooperman, Co-Defendant.

8. Mitchell Hennessey, Co-Defendant.

9. Daniel Knight, Co-Defendant.

No publicly traded company owns 10% or more of any party's stock.

Perry "PJ" Matlock, pro se
74 N. Lamerie Way
The Woodlands, Texas 77382
Telephone: 832-346-7936
Email: pjmatlock@protonmail.com
Dated: October 15, 2025

1

# CERTIFICATE OF SERVICE

I certify that on October 15, 2025, I served a copy of this Petition for Panel Rehearing, including appendices, on the following by _____, certified with return receipt requested:


United States Attorney's Office
Southern District of Texas
1000 Louisiana St., Suite 2300
Houston, TX 77002

Ford O'Brien Landy LLP
3700 Ranch Road 620 South, Suite B
Austin, TX 78738
(Counsel for Edward Constantinescu)

Dynamis LLP
175 Federal Street, Suite 1200
Boston, MA 02110
(Counsel for John Rybarczyk)

Jackson Walker LLP
1401 McKinney St., Suite 1900
Houston, TX 77010
(Counsel for Mitchell Hennessey)

Neal Davis Law Firm, PLLC
1545 Heights Blvd., Suite 700
Houston, TX 77008
(Counsel for Gary Deel)

Mallett Law Firm
4306 Yoakum Blvd., Suite 400
Houston, TX 77006
(Counsel for Stefan Hrvatin)

Sina Zadeh Law Firm
713 Booth St.
Houston, TX 77009
(Counsel for Tom Cooperman)

The Akers Firm, PLLC
3401 Allen Pkwy., Suite 101
Houston, TX 77019
(Counsel for Daniel Knight)


Perry "PJ" Matlock, Pro Se
74 N Lamerie Way
The Woodlands, Texas 77382
Telephone: 832-346-7936
Email: pjmatlock@protonmail.com
October 15, 2025



Time Sensitive

1-43 Copies

Petition for Panel

Rehearing

Case # 24-20143

United States v.

Galtherstineseri, et al,

ATTN: Clerk of

Court

Extremely Urgent

Use, Reuse, Recycle.

UPS NEXT DAY AIR

TRACKING #: 1Z A83 28T 01 7529 1550

LA 701 9-22

SHIP ATTN CLERK LYLE CAYCE
TO: US COURT OF APPEALS - 5TH CIRCUIT
STE 115
600 S MAESTRI PL

NEW ORLEANS LA 70130-3440

5: UPS Next Day Air®
UPS Worldwide Express®
UPS 2nd Day Air®

UPS Ground
UPS Standard
UPS 3 Day Select®
UPS Worldwide Expedited®

100% Recycled fiber
80% Post-Consumer

# United States Court of Appeals
# for the Fifth Circuit

---

No. 24-20143

---

United States Court of Appeals
Fifth Circuit

**FILED**

October 2, 2025

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellant*,

*versus*

EDWARD CONSTANTINESCU; PERRY "PJ" MATLOCK; JOHN
RYBARCZYK; GARY DEEL; STEFAN HRVATIN; TOM
COOPERMAN; MITCHELL HENNESSEY; DANIEL KNIGHT,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC Nos. 4:22-CR-612-1,
4:22-CR-612-2, 4:22-CR-612-3,
4:22-CR-612-4, 4:22-CR-612-5,
4:22-CR-612-6, 4:22-CR-612-7,
4:22-CR-612-8

---

Before HIGGINSON, WILLETT, and ENGELHARDT, *Circuit Judges*.

KURT D. ENGELHARDT, *Circuit Judge*:

Defendants were indicted for securities fraud for their involvement in
a "pump and dump" scheme. The superseding indictment alleges that de-
fendants induced their social-media followers to purchase securities through
posts misrepresenting their trading positions and the potential price of

No. 24-20143

securities, artificially inflating the securities' prices and allowing defendants to profit. The district court dismissed the indictment, concluding that it failed to state an offense by merely alleging that defendants sought to deprive their followers of potentially valuable economic information instead of a traditional property interest. Because we conclude that the indictment sufficiently alleges a scheme and intent to defraud, we REVERSE the district court's dismissal of the indictment.

I

The government alleges that Edward Constantinescu, Perry "PJ" Matlock, John Rybarczyk, Gary Deel, Stefan Hrvatin, Tom Cooperman, Mitchell Hennessey, and Daniel Knight engaged in a scheme to "pump and dump" securities. Defendants each had large social media followings across various platforms. They held themselves out to be skilled stock traders and frequently posted their trading activities on social media. To carry out their "pump and dump" scheme, the government alleges that defendants would purchase a security, "'pump' the price of that security by posting false and misleading information about the security on [social media] so that other investors were induced to purchase the security and artificially increase its price," and "dump" by secretly selling the security for a profit. Indictment ¶¶ 13–14. The indictment alleges that defendants profited $114 million from their scheme.

Defendants were indicted for conspiracy to commit securities fraud, in violation of 18 U.S.C. § 1349, and multiple counts of securities fraud, in violation of 18 U.S.C. §§ 1348 & 2. Knight pleaded guilty, and the remaining defendants moved to dismiss the indictment. The district court dismissed

No. 24-20143

the indictment, concluding that it failed to allege that defendants schemed to deprive victims of any traditional property interest.[1]

The government timely appealed.

## II

We review the sufficiency of an indictment *de novo*. *United States v. Rafoi*, 60 F.4th 982, 993 (5th Cir. 2023). "[T]he court is required to take the allegations of the indictment as true and to determine whether an offense has been stated." *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (quoting *United States v. Crow*, 164 F.3d 229, 234 (5th Cir. 1999)). An indictment must "(1) enumerate each *prima facie* element of the charged offense; (2) fairly inform the defendant of the charges filed against him; and (3) provide the defendant with a double jeopardy defense against future prosecutions." *United States v. Gaytan*, 74 F.3d 545, 551 (5th Cir. 1996). "In sum, to be sufficient, an indictment must allege each material element of the offense." *United States v. Guzman-Ocampo*, 236 F.3d 233, 236 (5th Cir. 2000) (quotation cleaned up).

## III

The securities fraud statute prohibits schemes to "defraud any person in connection with . . . any security" and schemes "to obtain, by means of false or fraudulent pretenses, representations, or promises, any money or property in connection with the purchase or sale of . . . any security." 18 U.S.C. § 1348. While "[t]here is scant caselaw construing the securities fraud statute in this circuit," § 1348 "borrows key concepts from the mail

---

[1] The district court dismissed the indictment by applying *Ciminelli v. United States*, 598 U.S. 306 (2023). After the district court dismissed the indictment, the Supreme Court clarified in *Kousisis v. United States*, 145 S. Ct. 1382, 1398 (2025), that an indictment alleging a fraudulent-inducement theory, as here, does not run afoul of *Ciminelli*.

and wire fraud statutes," so "courts have given the terms similar treatment," often relying on mail and wire fraud cases in analyzing securities fraud charges. *United States v. Greenlaw*, 84 F.4th 325, 339 n.6 (5th Cir. 2023). With those concepts in mind, securities fraud requires (1) a "scheme to defraud" (2) enacted with an "intent to defraud." *Id.* at 339. The "scheme to defraud" element requires a material misrepresentation "intended to deceive others in order to obtain something of value, such as money, from the [entity] to be deceived." *Id.* (alteration in original) (quoting *United States v. Evans*, 892 F.3d 692, 711–12 (5th Cir. 2018)). The "intent to defraud" element requires "an intent to (1) deceive, and (2) cause some harm to result from the deceit." *Id.* (quoting *Evans*, 892 F.3d at 712).

In sum, a defendant commits securities fraud when he "'engaged in deception'" and "[o]btaining the victim's money or property" was "'an object' of his fraud." *Kousisis v. United States*, 145 S. Ct. 1382, 1390–91 (2025) (quoting *Ciminelli v. United States*, 598 U.S. 306, 312 (2023)). Defendants concede that the indictment adequately alleges deception. But they contend that the indictment does not allege a scheme to defraud nor an intent to defraud. In their view, the indictment merely alleges that they intended to deprive their followers of valuable economic information (not money or property) to enrich themselves (not injure their followers). In light of the Supreme Court's decisions in *Ciminelli* and *Kousisis*, we disagree.

## A

Defendants argue that the district court properly dismissed the indictment because it does not allege a scheme to deprive their followers of a protected property interest. While it is true that a defendant cannot be convicted of fraud for depriving an individual of potentially valuable economic information alone, the indictment here went further, properly alleging defendants' scheme to defraud their followers of money.

No. 24-20143

In *Ciminelli*, the Supreme Court held that a fraud conviction cannot be based solely on the deprivation of valuable economic information. 598 U.S. at 316. There, Ciminelli's construction company paid a lobbyist to help it obtain state-funded jobs. *Id.* at 309–10. The government, in prosecuting Ciminelli for wire fraud, relied solely on a right-to-control theory. *Id.* at 310 & n.1. Under the right-to-control theory, the government attempted to "establish wire fraud by showing that the defendant schemed to deprive a victim of potentially valuable economic information necessary to make discretionary economic decisions." *Id.* at 310. In other words, under the right-to-control theory, the victim's property is the "the right to control [his] assets." *Id.* at 311. The Court held that because the federal fraud statutes protect only traditional property interests, and "[t]he right to valuable economic information . . . is not a traditional property interest," "the right-to-control theory cannot form the basis for a [fraud] conviction." *Id.* at 316.

The situation here is unlike that in *Ciminelli*. The indictment does not mention the right-to-control theory. Rather, it alleges that defendants induced their followers, through misrepresentations, to purchase securities— that is, to part with their money or property. The indictment alleges a "fraudulent-inducement theory," under which a defendant "uses a material misstatement to trick a victim into a contract that requires handing over her money or property." *Kousisis*, 145 S. Ct. at 1388. The Supreme Court, when analyzing the fraudulent-inducement theory, confirmed that it "is not a repackaging of the right-to-control theory." *Id.* at 1398 (quotation cleaned up). Unlike the right-to-control theory rejected in *Ciminelli*, the fraudulent-inducement theory advanced here "protects money and property." *Id.* The indictment does not run afoul of *Ciminelli* because it alleges defendants deprived their followers of a protected property interest by fraudulently inducing them to buy securities.

No. 24-20143

B

Defendants next argue that the indictment fails to allege an intent to defraud because it alleges defendants intended to profit from their scheme, not harm any victim. But the Supreme Court recently rejected a similar argument, holding that the fraud statutes do not require a victim to suffer an economic loss from a defendant's scheme. *Kousisis*, 145 S. Ct. at 1392.

In *Kousisis*, the defendant lied to obtain contracts with a state department of transportation. The state required contractors to subcontract with a disadvantaged business, and Kousisis falsely represented that his company would fulfill that requirement. Once his company was awarded the contracts, Kousisis used the disadvantaged-business subcontractor as "a mere 'pass-through' entity." *Id.* at 1389. When his lie came to light, the government charged Kousisis under the "fraudulent-inducement theory" whereby a defendant "uses a material misstatement to trick a victim into a contract that requires handing over her money or property—regardless of whether the fraudster, who often provides something in return, seeks to cause the victim *net* pecuniary loss." *Id.* at 1388 (emphasis in original). Kousisis argued that the fraudulent-inducement theory could not stand because it permitted a conviction in the absence of evidence that "the defendant sought to hurt the victim's bottom line." *Id.* at 1391. The Court rejected that assertion, holding that a defendant violates the fraud statutes when he "schem[es] to 'obtain' the victim's 'money or property,' regardless of whether he seeks to leave the victim economically worse off." *Id.* at 1392.

The indictment here sufficiently alleges defendants' intent to defraud their followers. For example, it alleges that defendants "post[ed] false and misleading information about the security . . . so that other investors were induced to purchase the security." Indictment ¶ 13. Because the fraud statutes do not require actual economic harm, defendants' followers' receipt

No. 24-20143

of market-value securities does not obviate the fraud charges.  *See Kousisis*, 145 S. Ct. at 1391 (concluding defendant may be liable in fraud even when he "provides something—be it money, property, or services—of equal value in return").  Defendants argue they intended to profit—not harm any victim.  But here, that is a distinction without a difference.  As the indictment alleges, defendants' object was to obtain money, and they did so by fraudulently inducing their followers to purchase securities.  The indictment's allegation that defendants pumped and dumped to gain a profit shows that they "had money in mind." *Id.* at 1397.  "[A] fraud is complete when the defendant has induced the deprivation of money or property under materially false pretenses"—regardless of whether the victim suffered a net pecuniary loss. *Id.* at 1394 n.5.  The indictment's allegation of defendants' fraudulently inducing their followers to purchase securities is sufficient to allege an injury. *See United States v. Baker*, 923 F.3d 390, 403–05 (5th Cir. 2019) (explaining that the fraud statutes do not impose a "mirror image" requirement where the victim's loss of money or property supplied the defendant's gain); *see also United States v. Smith*, Nos. 23-2840, 23-2846, & 23-2849, 2025 WL 2406104, at *6 (7th Cir. Aug. 20, 2025) (applying *Kousisis* in a similar context).

## IV

Because the indictment sufficiently alleges a scheme and intent to defraud, we REVERSE the district court's dismissal of the indictment and REMAND for proceedings consistent with this opinion.